# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 00-BU-2145-E |
| | ) | |
| KEVIN BRILEY and THE CITY | ) | |
| OF ANNISTON, ALABAMA, | ) | **ENTERED** |
| | ) | |
| Defendants. | ) | APR 19 2001 |

## Memorandum Opinion

In the above-styled action, John Walker claims that Kevin Briley, a municipal police officer, and his employer, the City of Anniston, Alabama (the "City") (collectively "Defendants"), are liable pursuant to 42 U.S.C. § 1983 for violation of Walker's constitutional rights and pursuant to Alabama law for false arrest, false imprisonment, and malicious prosecution. Walker also claims that the City is liable under Alabama law for allegedly failing to properly train and supervise Briley. Now before the Court is Defendants' motion for summary judgment on all claims, filed February 23, 2001. (Doc. 11). The parties have filed evidence and briefs in support of their respective positions on the motion, which is now ripe for decision. Upon careful consideration of the record and the arguments of counsel, the Court concludes that Defendants' motion for summary judgment (Doc. 11) is due to be GRANTED IN PART AND DENIED IN PART. It is due to be GRANTED as

to all claims, both state and federal, asserted against the Defendant City.  However, the motion is due to be DENIED insofar as it seeks dismissal of claims against the officer, Defendant Briley, in his individual capacity.[1]

## I.  BACKGROUND

At about 6:15 p.m. on March 20, 1999, Plaintiff Walker was riding in the front passenger seat of an automobile driven by an acquaintance of his, Ausey Sumlin.  At that same time, Defendant Briley and his partner, Brent Shane Denham, were riding on patrol in their capacity as police officers for the Defendant City.  Briley, who was driving the police vehicle, saw Sumlin execute a right turn without activating his turn signal.  Briley directed Sumlin to pull over by turning on the police vehicle's emergency lights and parked behind Sumlin in the 2100 block of Moore Avenue in Anniston.

Briley and Denham had a practice of taking alternate turns talking to any driver they pulled over for a routine traffic stop.  Since it was his turn, Denham went to the driver's side of the vehicle where Sumlin was seated while Briley reported the stop to the dispatcher.  Denham advised Sumlin that he had been pulled over for failure to activate his turn signal and asked Sumlin for his license. Sumlin complied, and Denham told him that he was not going to issue him a citation and that he should be more careful in the future.

Meanwhile, during the time Denham was speaking with Sumlin, Briley exited

---

[1] Walker's complaint does not specify whether Briley is being sued in his individual or official capacity.  "Whereas personal-capacity suits impose liability directly on government officials for actions taken under color of state law, an official-capacity suit is in actuality a suit against the governmental entity itself."  Popham v. City of Kennesaw, 820 F.2d 1570, 1581-82 (11th Cir. 1987).  Because Walker seeks only damages and has named the City as a defendant, the Court will assume, as have Defendants, that Briley is being sued in his individual capacity.

the police vehicle and approached the passenger side of the vehicle where Walker was seated.  According to Walker the events occurring immediately thereafter are these:  Briley shined a flashlight in his face and asked him, "You got any ID?" Walker replied that he did, and Briley demanded that he produce it.  Walker inquired why he was being told to provide identification.  Briley allegedly answered, "[The] Supreme Court give (sic) me a probable cause to ask you for your ID." Walker asked, "What is your probable cause," to which Briley's rejoinder was to order Walker out of the car. Walker obeyed and gave Briley his identification but told Briley he wanted his name and badge number.  Briley allegedly asked why Walker wanted that information, and Walker advised him that it was because he felt he was being "harassed."  Briley, according to Walker, told him to "shut up." Walker claims he answered, "Sir, as long as I am not belligerent with you or cussing you out you don't have the right to tell me to shut up.  I have got as much freedom of speech as you do."  Briley reportedly responded by warning, "If you say another word I am going to take you to jail, do you see those kids standing on the sidewalk over there?"  Walker alleges that when he looked in the direction towards which Briley had gestured when asking that question, no one was there.  He asked Briley what kids he was talking about and again requested Briley's name and badge number.  Briley then told Walker to turn around and that he was going to jail, and Briley placed Walker under arrest.

Defendants, on the other hand, adhere to a distinctly different version of events, although some common elements are clearly recognizable.  Defendants contend that when Briley asked Walker to produce his identification, Walker

became upset and accused the police of harassing him because of his race.[2]  Briley says he told Walker that the Supreme Court had said he, Briley, had the right to identify anyone in the vehicle.  Briley claims that Walker then exited Sumlin's vehicle of his own accord, not because he was ordered to do so, and demanded Briley's name and badge number.  Defendants aver that Walker continued to speak to Briley in a very loud and aggressive manner--to the point of shouting-- although Walker expressly denies that such was the case.  Defendants also assert that Walker used profanity a number of times during his exchange with Briley.  However, neither Briley nor Denham was able to recall anything specific on that front aside from one instance:  Briley allegedly warned Walker several times to "quit cussing" and calm down or he would have to take him to jail because there were a number of children present across the street.  Briley and Denham recall that in response, Walker snapped either "Fu** the children" or "I don't give a fu** about the kids." At that point, Briley claims, he placed Walker under arrest, and took him into custody, where Walker remained until he was released on bond later that same night.  Walker and Sumlin, however, expressly deny that the former ever used profanity or that any children were present at the scene, as Defendants claim.

On March 22, 1999, a criminal complaint was filed in the Anniston Municipal Court, alleging that Walker had committed the offense of disorderly conduct under § 13A-7-11, with Briley listed as the complainant.  On July 21, 1999, Walker was prosecuted in that court for that offense, a Class C misdemeanor.  At the trial, the State introduced into evidence a videotape showing the events

---

[2]Walker and Sumlin are both African-American, while Briley and Denham are both Caucasian.

surrounding the traffic stop of Sumlin's automobile.  This recording was made using a front-facing, stationary video camera mounted in Briley and Denham's patrol vehicle.  However, the videotape, which is also in evidence in this Court, lacks any audio component.[3] After viewing the videotape and considering the other testimony presented, the municipal court judge found Walker not guilty of disorderly conduct.

On August 2, 2000, Walker filed the instant action seeking an award of damages against the City and Briley, claiming that they are both liable under 42 U.S.C. § 1983 ("section 1983") for violations of Walker's Fourth Amendment rights, based on allegations that he was arrested, detained, and prosecuted without probable cause. Walker also claims that both Briley and the City are liable under Alabama law for the torts of false arrest, false imprisonment, and malicious prosecution.  Finally, Walker maintains that the City alone is liable for failing to properly supervise and train Briley.  Following discovery, Defendants filed the

---

[3]Walker claims that when he was placed in the rear of the police vehicle upon being arrested on the night in question, he saw the video camera and also heard voices and other sounds being picked up on an external microphone.  This leads him to suggest that the subject videotaping system did record audio as well as video with respect to the stop, but that the police subsequently "erased" the audio because it corroborated his allegations that he was not being loud or using profanity when speaking to Briley.  The Defendants, on the other hand, claim that the audio set-up in Briley and Denham's patrol car had not been operational for several weeks. While the reason audio is not present on the tape may be an important issue should this case go to trial, the Court concludes that it is not significant for purposes of the instant motion for summary judgment.  If Walker could actually prove that the police acted in bad faith by tampering with the tape, a jury could infer that the tape would have borne out Walker's version of events as to the content and nature of the exchange between Briley and himself.  See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997).  However, on a motion for summary judgment, this Court is already required to credit the testimony of Walker, the non-movant, where it is reasonably possible to do so.  See Stewart v. Booker T. Washington Ins., 232 F.3d 844, 850 (11th Cir. 2000).  Accordingly, the Court need not at this point in the proceedings further consider why audio is absent from the tape.

instant motion for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well as that

'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299).

## III.  CONTENTIONS & ANALYSIS

### A.  The Claims Against the City

After Defendants filed evidence and briefs in support of their motion for summary judgment, Walker did likewise in opposition.  However, in his brief Walker offers no argument whatsoever to challenge the City's assertion that it is entitled to summary judgment on all claims.  Suffice it to say here that the Court agrees that the City is entitled to summary judgment on Walker's claims under 42 U.S.C. § 1983 on the basis of the principles set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978), and Board of County Com'rs v. Brown, 520 U.S. 397, 403 (1997), and on Walker's state law claims pursuant to the immunity afforded municipalities by §§ 6-5-338 and 11-47-190 of the Alabama Code.  See Hardy v. Town of Hayneville, 50 F.Supp. 2d 1176, 1199-1201 (M.D. Ala. 1999). Therefore, Defendants' motion for summary judgment is due to be GRANTED as to all claims against the City.

### B.  The Claims Against Briley

#### 1.  The Federal Claims

Section 1983 creates a civil cause of action for any person deprived of any rights, privileges, or immunities, secured by the Constitution and laws, by another

person acting under color of state law.  42 U.S.C. § 1983.[4]  "In order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.' " Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990).   Here, the Defendants do not dispute that Walker's arrest and imprisonment by Briley, a municipal police officer, or Walker's subsequent criminal prosecution based on Briley's allegations, occurred under color of law for purposes of section 1983;  the sole issue with respect to a prima facie case on such federal claims is whether such official action deprived Walker of a constitutional right.  See United States v. Classic, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law"); Anderson v. Nosser, 438 F.2d 183, 188 (5th Cir. 1971)[5] ("Since all defendants in this case are state or municipal officials, the requisites of section 1983 are satisfied upon a showing of the denial of a constitutional right").

---

[4]Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

[5]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Id., citing Graham v. Connor, 490 U.S. 386, 394 (1989); Baker, 443 U.S. at 140. Here, Walker has claimed that he was arrested, imprisoned, and prosecuted, all without probable cause, and that such deprived him of "his personal liberty" and "civil rights" guaranteed by both the Fourth and Fourteenth Amendments of the United States Constitution. Complaint ¶¶ 24, 34.

### a.  Fourth Amendment Section 1983 Claim "for" False Arrest/Imprisonment[6]

The Fourth Amendment, made applicable to the States by virtue of its incorporation into the Fourteenth Amendment, see Baker, 443 U.S. at 142; Albright, 510 U.S. at 272 (plurality opinion), provides in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.   It is well established that a section 1983 claim may lie for a Fourth

---

[6]The Court notes that the parties characterize Walker's various Fourth Amendment claims under section 1983 as ones for "false arrest" or "false imprisonment" and "malicious prosecution." However, section 1983 does not "federalize" common law torts. See Baker, 443 U.S. at 146; Paul v. Davis, 424 U.S. 693, 701 (1976) (explaining that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States"). The core issue with respect to any section 1983 claim is whether a constitutional violation occurred, not whether the elements of a particular common law tort can be made out. However, given that the common law is often a proper starting point for examining the elements and immunities applicable to section 1983 claims, See Kalina v. Fletcher, 522 U.S. 118, 123 (1997), common law causes of action may be apt "shorthand" ways of describing or analogizing certain kinds of section 1983 claims. See Whiting v. Taylor, 85 F.3d 581, 584 (11th Cir. 1996); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994).

Amendment violation where a plaintiff is arrested and detained incident thereto where such "seizure" is "unreasonable" in that it is neither pursuant to a warrant nor supported by probable cause. See Ortega,  85 F.3d at 1526; Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990); Reeves v. City of Jackson, 608 F.2d 644, 650 (5th Cir. 1979). In order to prevail on a section 1983 claim alleging that his warrantless arrest was unconstitutional, a plaintiff has the burden at trial to prove the absence of probable cause. Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998).

Briley claims he had probable cause to arrest Walker for disorderly conduct, entitling him to summary judgment on this claim. See Marx, 905 F.2d at 150-06 ("The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest"). In order for probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances," Bailey v. Board of County Com'rs of Alachua County, Fla., 956 F.2d 1112, 1119 (11th Cir. 1992), and an officer's subjective intentions and beliefs play no role in determining the existence of probable cause. See Rankin, 133 F.3d at 1433-34. A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. at 1120 (quoting Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990). Probable cause to arrest thus requires something more than "mere suspicion," Mallory v. United States, 354 U.S. 449, 454 (1957), but does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Adams v. Williams, 407 U.S. 143, 149 (1972).

Briley also asserts that even if he lacked probable cause to arrest, he is nonetheless entitled to qualified immunity, and thus summary judgment, on this claim. Qualified immunity generally shields government officials from individual liability under section 1983, provided that "their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Because qualified immunity is the 'usual rule' for government actors sued in their individual capacities, it will shield them unless case law establishes a bright line in 'a concrete and factually defined context' that makes a violation of federal law obvious." Scarbrough v. Myles, ___ F.3d ___, ___, 2001 WL 303560, *1 (11th Cir. March 29, 2001) (quoting Lassiter, 28 F.3d at 1149). In the context of a claim of wrongful arrest, even if an officer lacks "actual" probable cause, he will still be protected by qualified immunity if there is at least "arguable" probable cause, i.e., if a reasonable police offer, given his knowledge of the facts and circumstances, could have believed there was probable cause to make a warrantless arrest. See Jones v. Cannon, 174 F.3d 1271, 1283 & n.3 (11th Cir. 1999). When deciding the issue of qualified immunity on summary judgment, this Court is required to resolve all issues of material fact in favor of the plaintiff and then answer the legal question of whether an official is entitled to qualified immunity under that version of the facts. Redd v. City of Enterprise, 140 F.3d 1378, 1380 (11th Cir. 1998).

Here, the Court concludes that, viewing the evidence in the light most favorable to Walker, Briley had neither actual nor arguable probable cause to arrest Walker for disorderly conduct, as that offense is defined by § 13A-11-7 and

authoritatively interpreted by the Alabama appellate courts. Walker admits that he voiced displeasure at being asked for identification and at allegedly being told to "shut up" after reporting that he felt "harassed." Walker concedes that he may have also suggested racial bias on the part of the police. However, Walker and Sumlin claim that in expressing such sentiments, Walker was not loud, did not use profanity, and that no one besides themselves and the two officers were present at the scene. The only piece of evidence that gives the Court pause to question whether such an account must be credited entirely is the silent police videotape depicting the stop of Sumlin's vehicle and Walker's subsequent arrest. For example, if the tape were to establish that children were present at the scene as Defendants claim, then a jury could not reasonably credit Walker's conflicting assertion. However, in viewing the tape, the Court notes that it does not depict whether anyone else besides Walker, Sumlin, and the two officers were present at the scene, nor what was said between Walker and Briley. The body language and facial expressions of Walker, who was facing in the direction of the camera for the most part, do suggest that he was displeased with Briley. However, the Court concludes that the video, standing alone and in the absence of any sound recording, is simply too ambiguous to allow the Court to reject, as a matter of law, Walker and Sumlin's testimony that the former was not speaking in a loud or belligerent tone prior to his arrest.

At the time of the offense, the Alabama courts also had, in order to avoid potential First Amendment infirmities, sharply and consistently limited what conduct and attendant circumstances are required for a violation of the disorderly conduct statute, especially where the defendant is addressing a police officer, and

even more so where such exchange is not heard by other members of the public, as Walker claims occurred here.  Compare <u>Duncan v. State</u>, 686 So. 2d 1279, 1281-82 (Ala. Cr. App. 1996) (vehicle passenger's refusal to produce driver's license for officer and statement of "fu** you" to officer did not support disorderly conduct conviction, where the passenger remained sitting in truck during conversation, passenger had not broken any laws when officer asked to see license, and passenger's statement did not constitute "fighting words"); <u>R.I.T. v. State</u>, 675 So. 2d 97, 98-100 (Ala. Cr. App. 1995) (juvenile's statement of "fu** you" to police officer, spoken in front of only family members and as juvenile was walking away from officer, did not constitute "fighting words," and thus juvenile could not be adjudicated delinquent for this statement based on finding of disorderly conduct); <u>Robinson v. State</u>, 615 So. 2d 112, 113-14 (Ala. Cr. App. 1992) (No offense committed where defendant shouted at police officer on patrol, "fu**" and the officer's name, because such did not amount to "fighting words," absent evidence that statement was for purpose of provoking physical retaliation or causing immediate breach of the peace); <u>L.M.A.W. v. State</u>, 611 So. 2d 497, (Ala. Cr. App. 1992) (student who was told that she was being expelled from school, who said, "I don't need this fu**in' school anyway" as she walked down a hallway  and then violently slammed the door behind her was not guilty of disorderly conduct where police chief was the only person who heard her remark); <u>Swann v. City of Huntsville</u>, 455 So.2d 944, 950-51 (conviction for disorderly conduct reversed, although evidence suggested the defendant was "loud," where no evidence showed that he made noise unreasonable under the circumstances, and his comments, "This is some sh** . . . . Damn you; you're just doing this because I'm black. You're

bringing us back a hundred years," did not contain a threat and did not have the likelihood of causing a violent response by the police officer to whom they were addressed); and Skelton v. City of Birmingham, 342 So. 2d 933, 936-37 (Ala. Cr. App.), remanded, 342 So. 2d 937 (Ala. 1976) (holding that the language, "Are you big sh**s going to move or am I going to have to go around," deemed not "fighting words" when addressed to a police officer), with Hutchins v. City of Alexander City, ___ So. 2d. ___, ___, 2000 WL 572726, *4 (Ala. Cr. App. 2000) (finding defendant had made "unreasonable noise" when he screamed, "Don't you fu**ing tell me what to do," in front of police officers and members of the public in a public area of the police station); and Smith v. City of Anniston, 668 So. 2d 96, 98 (Ala. Cr. App. 1995) (evidence was sufficient to sustain conviction for disorderly conduct where the defendant incited numerous others around him to become disorderly by yelling at a police officer, "Suck my di**" and "Well, I'm on private fu**ing property and you can't arrest me").

Based on the foregoing, it was clearly established at the time of the arrest here that Walker's conduct, as he alleges it occurred, was not violative of § 13A-11-7. Furthermore, the Eleventh Circuit had previously held that similar actions and statements towards a police officer did not give rise to probable cause to arrest for disorderly conduct under Florida law, which, like Alabama law, is restricted in its application to "fighting words." See Gold v. City of Miami, 121 F.3d 1442, 1446 & n.6 (11th Cir. 1997) (holding that it was "clear" that probable cause to arrest for disorderly conduct was absent where, the plaintiff, after watching an apparently non-handicapped woman park in a handicapped parking space at a bank, yelled at a police officer, "Aren't you supposed to give them a ticket for parking in a

handicapped spot," and thereafter loudly remarked to no one in particular, "Miami police don't do sh**," as he walked towards the ATM).[7] The Redd case, supra, relied upon by Briley is plainly distinguishable. There, the Eleventh Circuit held that officers had at least arguable probable cause to arrest the plaintiff, a traveling minister, for disorderly conduct under Alabama law where he admittedly was attempting to be heard over traffic at an intersection, he admitted that he succeeded in speaking loudly enough to be heard across the street, and uncontroverted testimony of nonparty officer established that passers-by complained of the loudness of his speech. See 140 F.3d at 1382-83 & n.4. Here, by contrast, Walker denies entirely that he was speaking loudly and the nonmovant's evidence supports an inference that no one besides Sumlin and the two police officers heard whatever Walker said and that there was, therefore, no "public inconvenience, annoyance, or alarm" whatsoever. The Court holds that substantial evidence supports a finding that Briley had neither actual nor arguable probable cause to arrest Walker for disorderly conduct under § 13A-11-7. Thus, the Court concludes that there is a genuine issue of fact as to whether a Fourth Amendment violation occurred[8] and

---

[7]Briley relies upon Gold to establish that he, like the officer in that case, had at least "arguable" probable cause to arrest for disorderly conduct. However, Gold can only hurt his cause, because the Eleventh Circuit's holding in the case that actual probable cause was absent, along with the Alabama appellate decisions clearly outlining the contours of § 13A-11-7, tends to give Briley "fair warning"that his arrest of Walker was unsupported by probable cause. See United States v. Lanier, 520 U.S. 259, 270-71 (1997). Unlike the officers in Gold, Briley is charged with constructive knowledge of the Gold opinion for purposes of guiding a determination of what constitutes probable cause to arrest for disorderly conduct.

[8]Walker's complaint also asserts that his Fourteenth Amendment rights have been violated. While this may be simply an acknowledgment that the Fourth Amendment is applicable to the States via the Fourteenth Amendment, it is not clear that Walker's claims are necessarily thus limited. He may be claiming instead that his arrest and ensuing detention without probable cause give rise to a 1983 claim premised upon a violation of "substantive" due

whether qualified immunity protects Briley, precluding summary judgment on this claim.

### b.    Section 1983 Claim "for" Malicious Prosecution

Walker also contends that he was maliciously prosecuted for disorderly conduct in the absence of probable cause to believe that he committed such an offense, giving rise to a constitutional injury for which he might recover against Briley under section 1983. Briley concedes that the Eleventh Circuit recognizes a type of section 1983 claim that is akin to the common law tort of malicious prosecution, "where the plaintiff, as part of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment."[9]

---

process, separate and apart from any Fourth Amendment violation. To the extent such a claim is being here asserted, however, it must be rejected. In Graham, 490 U.S. at 395, the Supreme Court explained that where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" such a claim. The requirement that a warrantless arrest and any detention immediately ensuing be supported by probable cause is firmly anchored to the Fourth Amendment's guarantee against unreasonable searches and seizures, even if applicable to the States via the Fourteenth Amendment. See Gerstein v. Pugh, 420 U.S. 103, 111 (1975) ("Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents. The standard for arrest is probable cause . . . ." (citations omitted)). This would, under Graham, clearly preclude looking to substantive due process as a source of additional protection with regard to claims of false arrest or false imprisonment, at least based on the facts alleged here. See Tesch v. County of Green Lake, 157 F.3d 465, 472 (7th Cir. 1998) ("Because the Fourth Amendment addresses the right of the people to be free of unreasonable seizures . . . [the plaintiff] cannot use substantive due process to backdoor the district court's conclusion that his arrest satisfies the Fourth Amendment's reasonableness standard."); Dorsey v. Wallace, 2000 WL 33249166, *8 (N.D. Ga. 2000); Rowe v. City of Fort Lauderdale, 8 F.Supp. 2d 1369, 1373 (S.D. Fla. 1998).

[9]In Albright, supra, the Supreme Court held that a section 1983 claim that one has been prosecuted maliciously without probable cause is not cognizable as a violation of "substantive" due process, although the Court left open the question of whether such a claim must state a claim for a Fourth Amendment violation. See 510 U.S. at 274-75 (plurality opinion).

Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996).  See also See Uboh v. Reno, 141 F.3d 1000, 1002-03 & n.4 (11th Cir. 1998); Kelly v. Curtis, 21 F.3d 1544, 1555 (11th Cir. 1994).   However, Briley asserts that in Whiting, the Eleventh Circuit indicated that the plaintiff's section 1983 claim there was "most analogous" to the tort of malicious prosecution because the seizures there were pursuant to legal process, i.e., a warrant, and that the court further suggested that the most analogous tort where a person is arrested before the commencement of a criminal proceeding is "false arrest."  See 85 F.3d at 585 & n.8.  Walker argues that because the initial arrest of Walker was undisputedly without a warrant, he can only maintain a section 1983 claim "for" false arrest or imprisonment, not "for" malicious prosecution.

As far as this Court is concerned, the only matter raised with respect to Walker's section 1983 claim for malicious prosecution relates to the type and extent of damages he might be eligible to recover under federal law.  In Heck v. Humphrey, 512 U.S. 488, 484 (1994), the Supreme Court indicated that, at common law, damages for a claim of false arrest " 'cover the time of detention up until issuance of process or arraignment, but not more,' " while a malicious prosecution plaintiff might recover "in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of society.' " (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed. 1984)).  To the extent such rules would apply to analogous section 1983 claims under Heck, the Court sees no reason to restrict Walker's damages just because he was arrested without a warrant.  Walker alleges that both his arrest and prosecution were

improper and lacking probable cause.  The Court has previously stated herein that Walker survives summary judgment on his claim that he was arrested without probable cause, in violation of the Fourth Amendment.  However, "[w]here an unjustified detention takes place, followed by an improper prosecution, the plaintiff may be required to assert both false imprisonment and malicious prosecution to recover all his damages."  Prosser and Keeton, at 886 (with a footnote referring the reader to the very rule cited by the Heck court with respect to the damages recoverable for malicious prosecution as distinguished from those for false arrest or imprisonment).  To the extent that a section 1983 claim for malicious prosecution under the Fourth Amendment affords Walker a complete remedy under the rules cited in Prosser, summary judgment is due to be denied.  See Whiting, 85 F.3d at 586 (when a "plaintiff seeks to recover damages for all the elements of the prosecution, he can properly wait until the prosecution terminates in his favor to bring his section 1983 claim which alleges that the seizure was unreasonable").

## 2.  The State Law Claims

### a.  False Imprisonment

Walker claims that Briley is liable for false imprisonment under Alabama law, which "consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  Section 6-5-170, Ala. Code (2001).  See Big B, Inc. v. Cottingham, 634 So. 2d 999 (Ala. 1993).  A wrongful or false arrest will support a claim for false imprisonment.  Upshaw v. McArdle, 650 So. 2d 875, 878 (Ala. 1994).  Briley argues that his arrest of Walker was lawful, and therefore privileged, because he had probable cause to believe Walker had committed the offense of disorderly conduct.  See Franklin v. City of Huntsville,

670 So. 2d 848, 852, (Ala. 1995) ("[P]robable cause must exist to make a lawful arrest"); See also § 15-10-3(a)(1) (authorizing an officer to arrest a person without a warrant, "if a public offense has been committed or a breach of the peace threatened in the presence of the officer"). However, Alabama's standard for the existence of probable cause is the same as the federal standard. See Nesmith v. Alford, 318 F.2d 110, 122 (5th Cir. 1963) ("The Alabama standard of probable cause in actions for malicious prosecution appears to be the traditional one"). Because the Court has already found there is evidence sufficient reasonably to suggest that no probable cause existed to arrest Briley without a warrant for disorderly conduct for purposes of his Fourth Amendment claim, such also implies that no probable cause existed for purposes of his state law claim for false imprisonment or arrest. Therefore, Briley is not entitled to summary judgment on this ground.

Briley also asserts that, pursuant to the discretionary function immunity provided by § 6-5-338, Ala. Code (2000),[10] he is entitled to prevail on Walker's state law claim alleging false imprisonment. In 1994, the Alabama legislature granted statutory immunity from tort liability to municipal police officers for "conduct in

---

[10]Section 6-5-338 provides in pertinent part as follows:

"(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

performance of any discretionary function within the line and scope of his or her law enforcement duties." § 6-5-338(a). Such immunity "shields [an] employee from liability if the employee is engaged in a discretionary act, instead of a ministerial one, when the alleged tortious conduct occurs." McDonough v. Parker, ___ So. 2d ___, ___, 2000 WL 1006952, *2 (Ala. 2000) (quoting Ex parte Alabama Dep't of Forensic Sciences, 709 So. 2d 455, 458 (Ala.1997). "Discretionary acts have been defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996). " 'Ministerial acts,' on the other hand, are those acts 'done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done.' " McDonough, supra (quoting Carroll v. Hammett, 744 So. 2d 906, 910 (Ala. 1999). Actions by an officer in executing an arrest are generally considered discretionary functions for purposes of § 6-5-338. See Wright, 682 So. 2d at 2; Ex parte City of Montgomery, 758 So. 2d 565, 569-71 (Ala. 1999); Sheth v. Webster, 145 F.3d 1231, 1238-39 (11th Cir. 1998).

However, also exempted from the coverage of the immunity provided by § 6-5-338 is conduct by a police officer that is "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." Couch v. City of Sheffield, 708 So. 2d 144, 153 (Ala. 1998). Thus, in the absence of sufficient proof indicating that an officer acted with malice or in bad faith in making or carrying out an arrest, the immunity of §6-5-338 shields him from tort liability. See Wright, supra; Ex

parte City of Montgomery, 758 So. 2d at 569-71; Sheth, 145 F.3d at 1238-39. Therefore, discretionary function immunity shields Briley from tort liability except to the extent that his arrest of Walker for disorderly conduct could reasonably be said to have been willful or malicious conduct or conduct engaged in bad faith. See Wright, supra.

Under the circumstances of the arrest alleged by Walker, the Court believes that a jury could reasonably determine that Briley's arrest was malicious and in bad faith. The evidence, viewed most favorably to Walker, suggests that Briley had no grounds to believe Walker had committed any offense whatsoever but rather simply did not like Walker questioning his authority or suggesting racist motivations. On this evidence, summary judgment on the ground of discretionary function immunity is due to be denied.

**b. Malicious Prosecution**

Finally, Walker claims that Briley is liable under Alabama law for malicious prosecution. In order to prevail on such a claim, a plaintiff has the burden at trial to prove the following elements: "(1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding. Delchamps, Inc. v. Bryant, 738 So.2d 824, 831-32 (Ala.1999). Briley argues that Walker cannot prove either the lack of probable cause or malice, under the third element above. He also argues that he is entitled to immunity on this claim under § 6-5-338.

The Court has previously held that there is sufficient evidence to find

probable cause for Walker's arrest was lacking.  In addition, the Alabama Supreme Court recently explained with respect to the elements of malice and probable cause:

> Malice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful.  Bryant, 738 So.2d at 833.  Personal ill will or a desire for revenge is not essential for a finding of malice.  Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992).  However, an inference of malice drawn from the lack of probable cause may be rebutted by evidence showing that the defendant acted in good faith.  Bryant, 738 So.2d at 832.

Wal-Mart Stores, Inc. v. Goodman, ___ So. 2d ___, ___, 2000 WL 1868437, *5 (Ala. 2000).  The Court previously found that there is sufficient evidence to believe that Briley arrested Walker maliciously and in bad faith for purposes of creating an exception to immunity under § 6-5-338.  There is no reason to distinguish between that arrest and his act of instituting the criminal proceedings against Walker two days later for the same offense.  Accordingly, the Court finds that Briley has failed to establish that Walker cannot make out his prima facie case or that he, Briley, must be entitled to discretionary function immunity on this claim. Summary judgment is, therefore, due to be denied as to such claim.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motion for summary judgment (Doc. 11) is due to be GRANTED IN PART AND DENIED IN PART.  It is due to be GRANTED as to all claims, both state and federal, asserted against the Defendant City.  However, the motion is due to be DENIED insofar as it seeks dismissal of claims against the individual officer, Defendant Briley.  Accordingly, the claims remaining in this action are the claims against Briley for (1) wrongful arrest, in violation of the Fourth Amendment, pursuant to

section 1983; (2) "malicious prosecution," also in violation of the Fourth Amendment, pursuant to section 1983; (3) false arrest/imprisonment under Alabama law; and (4) malicious prosecution under Alabama law. A separate order will be entered.

IT IS SO ORDERED, this _18th_ day of April, 2001,

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE